IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$137,480.00 IN UNITED STATES CURRENCY,

    Defendant.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

The United States of America ("United States"), by and through United States Attorney Cole Finegan and Assistant United States Attorney Elizabeth Young, pursuant to Supplemental Rule for Admiralty, Maritime and Asset Forfeiture Actions G(2), states:

## JURISDICTION AND VENUE

1.    The United States has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property based upon violations of the narcotics provisions of 21 U.S.C. § 801, *et seq*. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2.    Venue is proper under 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, as the defendant property is located and the acts described herein occurred in the District of Colorado.

1

## DEFENDANT PROPERTY

3. Defendant $137,480.00 in United States currency ("defendant $137,480.00 in U.S. currency") was seized on July 24, 2021, near the Denver International Airport, and is currently being held by the United States Marshals Service in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4. Except as otherwise noted, the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

**Background of Investigation**

5. Beginning in 2017, the Drug Enforcement Administration ("DEA") began investigating the Payan Drug Trafficking Organization ("DTO"), which is based in Sinaloa, Mexico, and is responsible for transporting methamphetamine and heroin from Mexico into the United States. Through this investigation, numerous members of this DTO were identified.

**Events Leading to the Seizure of the Defendant Currency**

### July 23, 2021

6. On July 23, 2021, law enforcement officers intercepted communications in which DTO member Francisco Gabriel Adame-Ruelas was instructing DTO member Gael Payan to deliver proceeds from drug sales in the form of United States currency to a money courier for transport back to Mexico. Adame-Ruelas also informed Payan that the courier would be delivering approximately 50 pounds of suspected methamphetamine and approximately 6.89 pounds of suspected heroin. Adame-Ruelas

2

had arranged for Payan to meet the courier, which ultimately took place at a hotel near the Denver International Airport.

7. Law enforcement officers intercepted communications between Payan and Adame-Ruelas in which Adame-Ruelas instructed Payan to set aside $82,500 and $55,000. Adame-Ruelas noted that if the $55,000 did not add-up, the money would be there after a drug deal that someone else was handling. Adame-Ruelas also talked about the need to find a place for the courier to count the money because it was a lot of money and they didn't want any problems.

8. Communications between Payan and Adame-Ruelas continued that day. During one call, Payan and Adame-Ruelas discussed the need to secure a hotel room where the money could be counted, then agreed that the courier should get the hotel room. Adame-Ruelas instructed Payan to start preparing the $82,500. Payan noted that he had the money, but would quickly recount it.

9. During another call between Payan and Adame-Ruelas later on July 23, 2021, Adame-Ruelas instructed Payan to count the $55,000. Payan noted that the amount was short by $2,000. They then discussed various illegal drug transactions and drug proceeds.

10. Later on July 23, 2021, Payan and Adame-Ruelas spoke several more times. In one conversation, Payan told Adame-Ruelas that he had counted out the $137,500 in United States currency that he would deliver to the courier. Payan also stated that he had placed the currency in two shoeboxes and wrote "82,500" on one of the shoeboxes and "55,000" on the other, so they would know how much currency was in each box. Payan also noted that the courier was a white male.

**July 24, 2021**

11. On July 24, 2021 at approximately 10:30 a.m., law enforcement officers observed Payan leaving his apartment located at 15793 East Caspian Circle, Aurora, Colorado, with DTO member Angel Leonardo Adame-Sanchez. Payan was carrying a red carry-on sized suitcase. Payan loaded the red suitcase into a white Chevrolet Trailblazer and the two left the area in the white Chevrolet Trailblazer.

12. At approximately 10:50 a.m., law enforcement officers observed the white Chevrolet Trailblazer arrive at the AmericInn Hotel located at 7010 Tower Road, Denver, Colorado.

13. At approximately 10:59 a.m., law enforcement officers intercepted communications between Adame-Ruelas and Payan, in which Adame-Ruelas notified Payan that he had received from the courier approximately 50 pounds of suspected methamphetamine and 4 packages of suspected heroin. Each heroin package, known as a "churro" by this DTO, is known to contain 625 grams of heroin.

14. At approximately 12:26 p.m., law enforcement officers intercepted communications between Adame-Ruelas and Payan in which Adame-Ruelas asked Payan if they (Payan and Adame-Sanchez) still had not left the hotel. Payan confirmed that they had not left. Adame-Ruelas and Payan made reference to drugs being at the hotel. Payan confirmed that they would leave soon.

15. At approximately 12:30 p.m., Adame-Ruelas called Payan. Adame-Ruelas told Payan that as soon as he and Adame-Sanchez were done, they should leave. He noted that they should be careful.

16. At approximately 12:34 p.m. law enforcement officers observed Payan

4

and Adame-Sanchez exiting the elevator in the lobby of the AmericInn Hotel. They were pushing a hotel luggage cart with a black duffle bag on top. Payan and Adame-Sanchez exited the hotel through the main lobby exit.

17. At approximately 12:40 p.m. law enforcement officers observed a woman and a white man exit the hotel through a back door on the west side of the hotel. The man was speaking on a cellular telephone and was heard saying into the telephone, "I don't know if they want me to take it all the way to A-Z or what." [It is believed that "A-Z" in this conversation was a reference to Arizona.] The woman was rolling a red carry-on sized suitcase. Law enforcement officers observed the man and woman load the red suitcase into a white pick-up truck with U-Haul graphics and Arizona license plates.

18. A Hispanic man exited the hotel and approached the man and woman at the white pick-up with U-Haul graphics. The Hispanic man spoke to the white man and pointed in the direction of one of the law enforcement officers engaged in surveillance.

19. The Hispanic man then left the area and the white man and the woman drove away from the parking lot of the hotel in the white pick-up truck with U-Haul graphics.

**Seizure of the Defendant Currency on July 24, 2021**

20. After the white pick-up truck with U-Haul graphics drove away from the hotel on July 24, 2021, law enforcement officers observed the white pick-up truck first traveling northbound on Tower Road and then making a left turn on East 83rd Avenue into a business park. The white pick-up truck stopped briefly next to a large dumpster.

21. The white pick-up truck then traveled back along East 83rd Avenue and turned right on Tower Road.

22. The white pick-up truck then traveled eastbound on Peña Boulevard toward the Denver International Airport.

23. As law enforcement officers observed the white pick-up truck travelling along Peña Boulevard, it was seen weaving in and out of traffic and frequently changing lanes without signaling.

24. The white pick-up truck then stopped on the side of the road and the male occupant was seen appearing to manipulate something behind the passenger seat.

25. The white pick-up truck then merged with traffic and began travelling again on Peña Boulevard toward the Denver International Airport.

26. The white pick-up truck was observed driving through the airport's "Departures" access lanes, then exiting the terminal back onto Peña Boulevard, and then exiting to return to the airport. The white pick-up truck completed this same maneuver two more times.

27. On the third time approaching the terminal, the white pick-up truck was seen entering a lane designated for commercial vehicles only. At this point, a Colorado State Patrol trooper initiated a traffic stop of the white pick-up truck and the driver reentered the "Departures" lane and stopped.

28. The Colorado State Patrol trooper contacted the occupants of the white pick-up truck. The driver was identified as Pamela Rose Beach Alvaran and the passenger as Jacob David Franco. Both individuals provided identification issued in California.

29. Franco showed one of the law enforcement officers a copy of the rental agreement for the white pick-up truck on Franco's cell phone. The agreement was for

an "in-town" rental and was overdue by more than 24 hours.

30. The law enforcement officers observed that Beach and Franco appeared very nervous when speaking to law enforcement officers and they had conflicting stories about their trip to Colorado.

31. The law enforcement officers questioned Beach and Franco about the red carry-on suitcase inside the white pick-up truck. Beach initially told the law enforcement officers that the suitcase belonged to her. Franco denied ownership and said he did not know who it belonged to. Beach told the law enforcement officers that there were clothes inside the red carry-on suitcase.

32. One of the law enforcement officers deployed his canine partner ("K-9"). The K-9 alerted to the odor of illegal narcotics coming from within the white pick-up truck. The law enforcement officer opened the passenger door and the K-9 alerted to the red suitcase.

33. The law enforcement officers opened the red carry-on suitcase. The red carry-on suitcase contained two Coach shoeboxes with silver duct tape across the middle of each lid. "82,500" was written on the tape on one of the shoeboxes, and "55,000" was written on the tape on the other shoebox. Collectively, the shoeboxes contained defendant $137,480.00 in U.S. currency.

34. When a law enforcement officer showed Beach the currency and asked who it belonged to, Beach shrugged her shoulders.

35. Franco told a different law enforcement officer on the scene that $83,000.00 of defendant $137,480.00 in U.S. currency belonged to him and the rest belonged to Beach.

36. When investigators told Franco that they would be seizing the currency, Franco became noticeably more nervous and changed his story and said that all of defendant $137,480.00 in U.S. currency belonged to him.

**Wages**

37. An inquiry with the Employment Development Department of the State of California revealed that Franco had no reported wages in the state of California for the period January 2020 through January 2022.

**Conclusion**

38. Based on the facts and circumstances described above, evidence shows that defendant $137,480.00 in U.S. currency was derived from or involved in illegal drug trafficking.

## VERIFICATION OF DANIEL WITTENBORN
## SPECIAL AGENT, DRUG ENFORCEMENT ADMINISTRATION

I, Special Agent Daniel Wittenborn, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

_____
Daniel Wittenborn
Special Agent - DEA

## FIRST CLAIM FOR RELIEF

39. The Plaintiff repeats and incorporates by reference the paragraphs above.

40. By the foregoing and other acts, defendant $137,480.00 in U.S. currency,

constitutes funds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or funds used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq*., and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for defendant $137,480.00 in U.S. currency in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 6th day of July 2023.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/   *Elizabeth Young*
Elizabeth Young
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
E-mail: Elizabeth.Young2@usdoj.gov
*Attorney for the United States*